Opinion filed April 5, 2007


















 
 
  
 
 







 
 
  
 
 




Opinion filed April 5, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                  ___________

 

                                                          No. 11-06-00077-CR 

                                                    __________

 

                            FORREST KEVIN BOLLINGER, Appellant

                                                             V.

                                        STATE
OF TEXAS,
Appellee

 



 

                                         On
Appeal from the 385th District Court

                                                        Midland County, Texas

                                                 Trial
Court Cause No. CR30505

 



 

                                                                   O
P I N I O N

 

The jury convicted Forrest Kevin Bollinger of
possession of a firearm by a felon, and the trial court assessed punishment at
thirty-five years confinement.  We
affirm.

                                                             I.  Background Facts

Shortly after midnight on January 24, 2005,
Bollinger was stopped on Interstate 10 by two Sutton County Sheriff=s deputies for speeding.  The deputies asked their dispatcher to check
Bollinger=s license
plate and driver=s license
numbers and the driver=s
license number of Bollinger=s
passenger.  The dispatcher reported that
the passenger had an outstanding warrant, and he was taken into custody.  No outstanding warrant was reported for
Bollinger.  The deputies searched the
passenger compartment of Bollinger=s
car and found a marihuana pipe in the right door panel on the passenger=s side. 
Bollinger=s
passenger admitted that the pipe was his.








The deputies then opened Bollinger=s trunk.  Inside were several rifles and shotguns.  The weapons were not in cases, but were
stacked on top of each other.  The
deputies suspected that the guns had been stolen, and they asked Bollinger to
accompany them to the sheriff=s
office.  Bollinger did so, and the
deputies ran the guns=
serial numbers through a database and learned that they had not been reported
stolen.  The guns were returned to
Bollinger, and he was allowed to leave.

Later that day, Richard D. Davis returned home
after an extended absence.  He noticed
that his dog was not in the backyard and, when he investigated, saw that a
sliding glass door was open and that his dog was inside.  He searched his house and discovered that
several guns had been taken from a gun cabinet. 
He contacted the police and reported the theft of eight rifles and
shotguns, and he provided them with a serial number for each gun.  The serial numbers Davis
provided matched those the Sutton
 County deputies had
previously found on the guns in Bollinger=s
trunk.

Bollinger was indicted in Midland County
for possession of a firearm by a felon. 
Bollinger pleaded not guilty and was tried by a jury.  The jury found him guilty of the charged
offense, and the trial court assessed his punishment at thirty-five years
confinement.

                                                                       II.  Issues

Bollinger challenges his conviction with six
issues. Bollinger contends that the evidence is legally and factually
insufficient to support his conviction because the State failed to prove that
he possessed a firearm in Midland County, that the evidence from his trunk
should have been suppressed, that the State=s
closing argument was improper, that he was denied the effective assistance of
counsel, and that his continued incarceration violates his right to due process.

                                                                     III.
Analysis

A.   Was the Evidence Legally and Factually
Sufficient?

Bollinger=s
insufficiency challenges focus on three elements of the State=s case. 
He argues that there was insufficient evidence of possession, possession
of a firearm, or possession of a firearm in Midland County.

1. 
Standard of Review.








In order to determine if the evidence is legally
sufficient, we must review all of the evidence in the light most favorable to
the verdict and determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S.
307 (1979).  To determine if the evidence
is factually sufficient, the appellate court reviews all of the evidence in a
neutral light.  Watson v. State,
204 S.W.3d 404, 414 (Tex.
Crim. App. 2006).  Then the reviewing
court determines whether the evidence supporting the verdict is so weak that
the verdict is clearly wrong and manifestly unjust or whether the verdict is
against the great weight and preponderance of the conflicting evidence.  Id.
at 414-15.  The jury, as the finder of
fact, is the sole judge of the weight and credibility of the witnesses= testimony.  Tex.
Code Crim. Proc. Ann. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).

We analyze the sufficiency of the evidence to
prove possession of a firearm by a felon under the rules adopted for
determining the sufficiency of the evidence in cases of possession of a
controlled substance.  Nguyen v. State,
54 S.W.3d 49, 52 (Tex. App.CTexarkana
2001, pet. ref=d).  The State must prove the following:  (1) that the accused exercised actual care,
control, or custody of the firearm; (2) that he was conscious of his connection
with it; and (3) that he possessed the firearm knowingly or intentionally.  Id.
(citing Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)).

2. 
Possession.

A person commits a possession offense only if he
voluntarily posseses the prohibited item. 
Tex. Pen. Code Ann. ' 6.01(a) (Vernon 2003).  Possession is a voluntary act Aif the possessor knowingly obtains or
receives the thing possessed or is aware of his control of the thing for a
sufficient time to permit him to terminate his control.@  Tex.
Pen. Code Ann. '
6.01(b) (Vernon 2003).  The State does
not have to prove that the accused had exclusive possession of the firearm;
joint possession is sufficient to sustain a conviction.  Cude v. State, 716 S.W.2d 46, 47 (Tex.
Crim. App. 1986).  The State can meet its
burden with direct or circumstantial evidence, but it must establish that the
defendant=s
connection with the firearm was more than fortuitous.  Brown, 911 S.W.2d at 747.








When the firearm is not found on the accused=s person or is not in the accused=s exclusive possession, additional facts
must affirmatively link the accused to the firearm.  Jones v. State, 963 S.W.2d 826, 830
(Tex. App.CTexarkana
1998, pet. ref=d).  Factors that may establish affirmative links
include the following:  whether the
firearms were in a car driven by the accused, whether the firearms were in a
place owned by the accused, whether the firearms were conveniently accessible
to the accused, whether the firearms were found in an enclosed space, and
whether the accused made any affirmative statement connecting him to the
firearms.  Corpus v. State, 30
S.W.3d 35, 38 (Tex. App.CHouston
[14th Dist.] 2000, pet. ref=d).  No set formula of facts exists to dictate a
finding of affirmative links sufficient to support an inference of knowing
possession.  Taylor
v. State, 106 S.W.3d 827, 830 (Tex.
App.CDallas
2003, no pet.).  The affirmative links
ordinarily emerge from an orchestration of several factors and the logical
force they have in combination.  Nguyen,
54 S.W.3d at 53.

The firearms were not on Bollinger=s person or in his exclusive control,
but when the evidence is viewed in the light most favorable to the jury=s verdict, it is legally sufficient to
support a finding of possession because of the links between him and the
weapons.  The record does not indicate
who owned the vehicle, but Bollinger was the driver at the time of the stop and
he left in it after being released.  When
the deputies opened the trunk, Bollinger told them that the firearms belonged
to his dad and uncle and that he and his passenger were bringing them back from
Midland.[1]
After checking the serial numbers, the deputies returned the weapons to
Bollinger who took them, put them back in the vehicle, and left.  Because Bollinger=s
passenger was arrested during the traffic stop, Bollinger had sole possession
of and access to the firearms at that point in time.  Bollinger=s
conduct, from the moment the trunk was opened until the firearms were returned
to him, is consistent with a finding that they were in his care, custody, and
control and that he was knowingly transporting them.  The evidence is legally sufficient to support
a finding of possession.

When the evidence is viewed in a neutral light, it
is also factually sufficient.  Bollinger
focuses on the fact that his passenger could have placed the firearms in the
trunk without his knowledge and on inconsistencies in the State=s evidence.  The State, however, was not required to prove
that Bollinger had exclusive possession of the firearms, and any
inconsistencies in the State=s
evidence were within the jury=s
province to resolve.








Bollinger correctly notes that the firearms were
not in his exclusive control but were in a locked trunk and that his passenger
could have placed them there without his knowledge.  The record, however, is inconsistent with
this hypothesis.  When police discovered
drug paraphernalia during their search of the car, Bollinger=s passenger claimed possession of
it.  But when the trunk was opened,
Bollinger did not act surprised to see the firearms or disclaim any knowledge
of them, nor did his passenger claim possession.  Instead, Bollinger=s
statements to the deputies support no conclusion other than the fact that he
knew they were there.

Bollinger also correctly notes that the videotape
does not show any firearms, that the dispatcher did not see any firearms, that
the videotape counter indicated that the traffic stop happened at the same time
the dispatcher testified that she researched the serial numbers, that there was
some conflicting evidence of whether eight guns were checked or just four, and
that the deputies could not match the serial numbers with any particular
weapon.  These challenges go to the
credibility of the individual witnesses and the weight to be given to their
testimony and, therefore, were for the jury to resolve.  Fuentez v. State, 196 S.W.3d 839, 846
(Tex. App.CEastland
2006, no pet.).

The video camera was mounted in the deputies= vehicle and did not record what was in
the trunk because of the angle.  However,
the jury saw the videotape and heard the officer=s
reaction to seeing the firearms and, more importantly, heard Bollinger=s response to the officers.  He did not deny that there were firearms in
the trunk, but explained why they were there. 
The mere fact that the clock on the video camera and the clock on the dispatcher=s computer were inconsistent is of no
consequence.

Similarly, the fact that the dispatcher did not
see the weapons, but just entered serial numbers into the database, is of no
moment.  The jury heard both deputies
testify that they saw the firearms. The jury was able to compare the deputies= descriptions of the firearms, the
serial numbers the Sutton County Sheriff=s
office researched, and Davis=s
testimony.  Deputy Oscar Chavez testified
that there were eight weapons.  He
described some of them and told the jury the eight serial numbers that were
collectively taken off of the weapons. 
These eight serial numbers matched the eight serial numbers Davis
testified were on his missing weapons. 
Furthermore, even though Bollinger told the deputies that the firearms
belonged to his dad and uncle, he offered no evidence at trial to dispute Davis=s contention that they had been stolen
from his house.  The evidence was
factually sufficient to support the jury=s
finding of possession.

 








3. Of a Firearm.

The trial court instructed the jury that Afirearm@
meant Aany
device designed, made or adapted to expel a projectile through a barrel by
using the energy generated by an explosion or burning substance, or any device
readily convertible to that use.@  See Tex.
Pen. Code Ann. '
46.01(3) (Vernon 2003).  Bollinger argues
that this required the State to prove beyond a reasonable doubt that he
possessed an actual firearm capable of its intended use as compared with
something that might look like a firearm.

Bollinger=s
argument overstates the State=s
burden.  The State was not required to
prove that any of the firearms were operable. 
See Lewis v. State, 852 S.W.2d 667, 669 (Tex. App.CHouston [14th Dist.] 1993, no pet.) (in
prosecution for unlawful possession of a short-barrel firearm, the State was
not required to prove that the weapon was operable).  But cf. In re K.H., 169 S.W.3d 459,
464 (Tex. App.CTexarkana
2005, no pet.) (inoperable pellet gun was not a firearm as defined by Section
46.01(3)).  Section 46.01(3) does exclude
antiques or curio firearms manufactured before 1899, as well as replicas of
antiques or curios manufactured before 1899 B
if the replica does not use rim fire or center fire ammunition B from the definition of firearm.  The State, however, is not required to prove
that a firearm is not an antique, curio, or replica thereof.  Jackson v. State, 575 S.W.2d 567, 569
(Tex. Crim. App. 1979).  

The record sufficiently establishes that Bollinger
had possession of a firearm as defined by the statute.  The weapons were repeatedly described by the
deputies as rifles, high-powered rifles, and shotguns.  They referred to some by brand, such as
Weatherby, Browning, Kimber, and Lefever; and they described some as being very
expensive.  Davis described each of the
eight weapons by brand and caliber.  They
ranged from a .22 caliber rifle to a .50 caliber black powder rifle and
included a 12-gauge and a 20-gauge shotgun. 
There was no evidence to suggest that the weapons were anything other
than actual firearms.  The evidence,
therefore, is legally and factually sufficient to support the jury=s finding that Bollinger possessed a
firearm.

4. 
In Midland County.








The State was required to prove that Bollinger
possessed a firearm in Midland County, but because venue is not an essential
element of the offense, it need only be proven by a preponderance of the
evidence.  Black v. State, 645
S.W.2d 789, 790 (Tex. Crim. App. 1983). 
Proof of venue may be established through direct or circumstantial
evidence.  Id.  The trier of fact may make reasonable
inferences from the evidence to decide the issue of venue.  Bordman v. State, 56 S.W.3d 63, 70
(Tex. App.CHouston
[14th Dist.] 2001, pet. ref=d).  In our review, we determine if, from the
evidence, the jury reasonably could have concluded that Bollinger possessed a
firearm in Midland County.  Sudds v.
State, 140 S.W.3d 813, 818 (Tex. App.CHouston
[14th Dist.] 2004, no pet.).

Bollinger argues that the State did not carry its
burden of proof because no eyewitness saw him with the firearms outside Sutton
County and no witness saw him in Midland County on the date alleged in the
indictment.  Bollinger acknowledges that
the deputies testified that he told them that he was coming from Midland, but
he contends that this is insufficient to establish venue because the mere fact
that he may have been in Midland at some point in time does not establish that
he ever had possession of the firearms while there.  Bollinger=s
well-articulated argument is undercut by his own statements at the scene.  On the videotape, he can be heard to say that
the guns belonged to his dad and uncle and that he and his passenger Awere bringing them back from Midland.@

Bollinger=s
statement does not foreclose the possibility that he acquired possession of the
firearms beyond Midland County, but the jury=s
decision is also supported by circumstantial evidence connecting Bollinger with
the underlying theft.  The house was not
in disarray, and only a few select items were taken.  This would indicate that the thief had some
familiarity with Davis=s
house.  Davis testified that he knew
Bollinger.  In 2003, he hired Bollinger
to do some painting and light repair work at his house.  Davis=s
guns were inside the house and Bollinger went inside the home.  Davis testified that, besides Bollinger, only
three other non-family members were in his house the year before the
burglary.  One of these was Davis=s legal assistant, Elizabeth Melson.
Davis testified that Bollinger had dated Melson, that he thought Bollinger was
abusing her, and that Bollinger might have perceived that a rivalry existed
between them because of this.








The only things taken were the guns, a video
camera (that had been on top of the gun case), cuff links, and a bedspread from
the room where the gun cabinet was located. 
The serial numbers on the guns in Bollinger=s
trunk were the same as the serial numbers on the guns Davis reported
stolen.  The deputies can be heard on the
videotape discussing a blanket in the backseat of Bollinger=s car. 
The video shows one of the deputies removing that blanket during the
search of Bollinger=s
vehicle.  The quality of the video is not
ideal, but the blanket looks very much like a comforter.

Circumstantial evidence also indicated that the
guns had been stolen not long before Bollinger was stopped by the
deputies.  Bollinger was stopped shortly
after midnight on January 24. When Davis returned home from Ruidoso later that
day, a sliding glass door was open, and his dog was inside.  Davis testified that it appeared that his dog
had been inside the house for only a day or two because there was a bone that
appeared to be relatively fresh and the dog had not damaged anything.

Finally, the jury was entitled to consider
Bollinger=s
explanation for possession and the manner in which the firearms were being
transported.  Texas courts have held that
recent and unexplained possession can support a conviction for theft.  See Hardesty v. State, 656 S.W.2d 73,
76-77 (Tex. Crim. App. 1983).  If the
defendant offers an explanation, the record must establish that this
explanation is false or unreasonable.  Jackson
v. State, 12 S.W.3d 836, 839 (Tex. App.CWaco
2000, pet. ref=d).

Bollinger=s
statement at the scene that the guns belonged to his dad and uncle is clearly
false.  No evidence was offered to
support this statement, nor was Davis=s
testimony that he owned the firearms ever rebutted.  Furthermore, both Deputy Chavez and Deputy
Matthew Wayne Routh noted that the firearms B
some of which were clearly expensive B
were simply stacked in the trunk without the use of gun cases or protective
wrapping.

From this evidence, the jury could have reasonably
determined that venue was proper in Midland because Bollinger was responsible
for the theft of Davis=s
guns.  Because venue requires proof only
by a preponderance of the evidence, we express no opinion on whether Bollinger
could have been convicted of theft. 

Bollinger argues alternatively that venue cannot
be established by his out-of-court statements alone.  Bollinger relies upon the rule that the State
cannot establish the corpus delicti of an offense solely by the
defendant=s
out-of-court statements, but must establish the fact that the crime was
committed by other evidence.  See
Hanson v. State, 781 S.W.2d 445, 446 (Tex. App.CFort
Worth 1989), appeal abated, 790 S.W.2d 646 (Tex. Crim. App. 1990)
(appeal abated because of the intervening death of the defendant).  








In Salazar v. State, 86 S.W.3d 640, 644
(Tex. Crim. App. 2002), the court held that the corpus delicti rule
ensures that a person is not convicted of a crime that never occurred based
solely upon their extra-judicial confession. 
The rule accomplishes this by requiring confirmation that a loss or
injury has occurred and that it was caused by criminal action as opposed to
accident.  Id.  The rule does not apply when a crime has
actually occurred.  Id. at
644-45.  Neither is the rule intended as
a safeguard against involuntary confessions. 
Id. at 645 n.16.

In this case, there was sufficient confirmation
that a crime did in fact occur.  The
deputies both testified that they saw the eight weapons in the trunk of
Bollinger=s
car.  The videotape does not show the
weapons but does record the deputies=
statements immediately after the trunk was opened.  The deputies testified to, and offered
documentary evidence of, their submission of the weapons=
serial numbers to the criminal database. 
The serial numbers they searched matched those provided by Davis to the
police later that day.  Finally, the
State offered documentary evidence of Bollinger=s
prior felony conviction.

We do not believe that the corpus delicti
rule applies to venue because it is not an element of the offense.  Bollinger concedes this but contends that
venue is an element of the corpus delicti because it was an element of
the crime as charged in the indictment and the State was required to prove
venue by a preponderance of the evidence. 
Bollinger=s premise
is correct, but we do not believe that it mandates his conclusion.  The corpus delicti rule does not
require confirmation of every element alleged in the indictment or for which
the State has the burden of proof.  For
example, the rule does not require confirmation that the defendant was
responsible for the crime.  Id. at
644.  Nor does the rule require
confirmation of the specific details of the confession.  Id. 
The State has the burden of proof on identity; and generally, the
indictment will specify the means and manner of the offense.  Consequently, the mere fact that the State
has the burden of proof on an issue or includes an allegation in an indictment
is insufficient to trigger application of the rule.

But if we are mistaken, there was circumstantial
evidence connecting Bollinger with the theft of the firearms. This evidence
corroborates the fact that the crime occurred in Midland County.  Bollinger=s
first and second issues are overruled.

 

 








B. 
Should the Evidence Have Been Suppressed?

Bollinger argues that the search was unreasonable
and illegal because it was conducted without his consent, probable cause, a
search warrant, or an exception to the Fourth Amendment=s
warrant requirement.  Bollinger filed
three pretrial motions to suppress evidence and requested the suppression of
any evidence obtained in connection with his detention.  The record does not indicate that he ever
obtained a ruling on any of these motions. 
The State argues that this issue has, therefore, been waived.  We agree. 
The failure to obtain an adverse ruling on a motion to suppress fails to
preserve error.  Dunavin v. State,
611 S.W.2d 91, 97 (Tex. Crim. App. 1981). 
Bollinger=s third
issue is overruled.

C.  Was
the State=s Closing
Argument Improper?

Bollinger contends that the prosecutor engaged in
improper jury argument by implying that the jury had no role in determining the
legality of any search, by implying that the trial court had previously
determined the search was legal, by misstating the venue law and the venue
facts, by implying that the jury had no role in determining venue, by telling
the jury that not finding venue in Midland was tantamount to taking the easy
way out through the use of a loophole, and by striking at him over the shoulder
of his attorney.

The State does not attempt to justify any of the
challenged arguments.  Some are cause for
concern, but as the State correctly notes, no error has been preserved.  Bollinger did object to some portions of the
State=s closing
argument, but he did not object to any of the challenged statements.  The failure to do so waives any error.  Cockrell v. State, 933 S.W.2d 73, 89
(Tex. Crim. App. 1996).  Bollinger=s fourth issue is overruled.

D.  Was
Bollinger Denied the Effective Assistance of Counsel?








Bollinger contends that he received ineffective
assistance of counsel because his counsel failed to obtain a ruling on any of
the pretrial motions to suppress, did not object to the admission of the
evidence obtained during his detention, did not request a jury instruction
pursuant to Tex. Code Crim. Proc. Ann.
art. 38.23 (Vernon 2005),[2]
and did not object to the State=s
improper jury argument.  The State argues
that the record is insufficient to support a conclusion of ineffective
assistance, that the deputies had probable cause to search Bollinger=s vehicle, and that there is evidence
of consent.

1. 
Standard of Review.

To determine whether Bollinger=s counsel rendered ineffective
assistance at trial, we must first determine whether Bollinger has shown that
counsel=s
representation fell below an objective standard of reasonableness and, if so,
then determine whether there is a reasonable probability that the result would
have been different but for counsel=s
errors.  Strickland v. Washington,
466 U.S. 668 (1984).  We must indulge a
strong presumption that counsel=s
conduct fell within the wide range of reasonable professional assistance; and
Bollinger must overcome the presumption that, under the circumstances, the
challenged action might be considered sound trial strategy.  Tong v. State, 25 S.W.3d 707, 712
(Tex. Crim. App. 2000).  A[C]ounsel is strongly presumed to have
rendered adequate assistance and made all significant decisions in the exercise
of reasonable professional judgment.@  Strickland, 466 U.S. at 690.  An allegation of ineffective assistance must
be firmly founded in the record, and the record must affirmatively demonstrate
the alleged ineffectiveness.  Thompson
v. State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).  Under normal circumstances, the record on
direct appeal will not be sufficient to show that counsel=s representation was so deficient and
so lacking as to overcome the presumption that counsel=s
representation was reasonable and professional. 
Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).  Rarely will the record on direct appeal
contain sufficient information to permit a reviewing court to fairly evaluate
the merits of such a serious allegation. 
Id.

2. 
The Motions to Suppress.

Bollinger contends that he urged his counsel to
press for a suppression hearing, and he notes that his counsel filed an
affidavit in support of one of the suppression motions.  He concludes that there was no reason not to
request a hearing on the suppression motions and, therefore, that his attorney
was ineffective for not doing so.  The
State=s
principal response is that the record is insufficient to sustain an ineffective
assistance complaint because there is at least a fact question on whether
Bollinger consented to the search or whether the officers had probable cause to
conduct their search.








We agree with the State that there is an
unresolved fact question on the officers=
probable cause and thus, on the basis of the record before us, cannot conclude
that counsel was constitu-tionally ineffective for not seeking a hearing on the
motions to suppress, for not objecting to the admission of any evidence from
the search, and for not requesting a jury instruction pursuant to Article
38.23.

When the deputies learned that Bollinger=s passenger had an outstanding warrant,
they placed him under arrest.  They were
then authorized to conduct a search incident to an arrest of his person and the
area in his immediate control.  Chimel
v. California, 395 U.S. 752, 762-63 (1969). 
Because the passenger had been in Bollinger=s
vehicle, this search could extend to the vehicle=s
passenger compartment. New York v. Belton, 453 U.S. 454, 459-60 (1981).

That search revealed the presence of drug
paraphernalia.  The deputies were then
authorized to conduct a broader search.  See
Carroll v. United States, 267 U.S. 132, 156 (1925) (warrantless search of a
vehicle by officer with probable cause to believe the vehicle contained
contraband did not run afoul of the Fourth Amendment); see also United
States v. Ross, 456 U.S. 798, 825 (1982) (if probable cause exists to
believe contraband is concealed in a lawfully stopped vehicle, officers are
justified in conducting a probing search of compartments and containers within
the vehicle whose contents are not in plain view and that may conceal the
object of the search).  This search led
to the discovery of the firearms in the trunk and to the deputies= efforts to determine if they had been
reported as stolen.  

Whether the deputies=
actions after discovering the paraphernalia were reasonable depends upon
whether they were reasonably related in scope to the circumstances that
justified their prior actions or whether they had probable cause.  See Davis v. State, 947 S.W.2d 240,
242 (Tex. Crim. App. 1997). The record shows that, at the least, fact questions
exist over whether the scope of the deputies=
search was reasonable and whether the deputies had probable cause to believe
that Bollinger was in possession of stolen firearms. 








 It is
undisputed that Bollinger=s
vehicle was stopped for speeding, that the deputies properly arrested his
passenger, and that they lawfully discovered the drug paraphernalia in the
vehicle.  We cannot say that as a matter
of law it was unreasonable for the deputies to then look in the vehicle=s trunk.  When the trunk was opened, the deputies
observed several weapons, some of which were obviously expensive, simply
stacked in the trunk without the benefit of carrying cases or protective
covering.  This is some evidence that a
crime has or was being committed. We cannot say that as a matter of law the
deputies= decision
to conduct a further investigation after seeing the weapons or the procedure
they utilized was unreasonable.  Because
we cannot conclude as a matter of law that an unreasonable search or seizure
took place, we cannot determine that Bollinger=s
trial counsel was constitutionally ineffective for not requesting a suppression
hearing or for not objecting to any evidence developed by the deputies during
their search.

3. 
Closing Argument.

Bollinger argues that his counsel was ineffective
for not objecting to the State=s
closing argument.  Bollinger=s complaints primarily concern the
prosecution=s
statements about the legality of the search, venue, and attacks against his
counsel.  Representative of the former is
the following:

During the questioning, Mr. Sykes asked several
times, I believe -- and I know once, for sure, about did you get consent to
search?  Huh-oh.  Consent to search.

 

Was the search good?  

 

You know who determines that?  Judge Darr determines if the search is good
or bad.  Not this jury in this case.  If we did that, we would have no consistency
in how searches can be done.  The
Constitution protects us from illegal searches and seizures.  And the Court determines whether or not a search
and seizure was legal or not.  That=s not in issue here.

 

Bollinger argues that this misstates both the law and facts.  First, Judge Darr did not rule on any of the
motions to suppress and, therefore, had not determined that the search was
proper.  Second, because the legality of
the search was in issue, the jury did have a responsibility to independently
assess the deputies=
actions.  See Article 38.23.

With regard to venue, Bollinger complains about
the following argument in which the prosecution, after pointing out the lower
burden of proof for venue, said:

If you want to take the easy way out, and figure,
well, it is just a loophole, and we don=t
think there is venue, then that=s
up to you.  All right.  I suggest to you that wouldn=t be the proper thing to do.  But you are the jury.

 








Bollinger also argues that related statements misstated the State=s burden and misstated the venue
facts.  He concludes that this was
harmful because it led to the jury either ignoring the venue issue or weighing
it with substantially less significance than it otherwise would have.

Bollinger finally argues that the State improperly
prejudiced him by attacking his counsel with statements such as:

Defense lawyers -- not all of them, but on a
whole, one thing you want to do, if there is a lot of evidence against your
client, is try to lead you all twelve off the facts of what=s on trial.

 

The State makes no direct response to Bollinger=s contention that counsel should have
objected to these arguments other than to characterize any potential objection
as Afrivolous.@[3]

The decision to object to a particular argument
almost always involves trial-strategy considerations.  Bollinger=s
trial counsel did object three times during the State=s
closing argument.  Counsel can be
concerned that too many objections will alienate a jury or that an objection
might draw unwanted attention to a particular issue.  The Texas Court of Criminal Appeals has held
that defense counsel should ordinarily be accorded an opportunity to explain
their actions before being condemned as unprofessional and incompetent.  See Bone, 77 S.W.3d at 836.  

We cannot determine why counsel chose not to
object to these additional statements with the record before us.   In the absence of this information, we are
required to assume a strategic motive if any can be imagined and can find
counsel=s performance
deficient only if his conduct was so outrageous that no competent attorney
would have engaged in it.  Andrews v.
State, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).  Because there are legitimate tactical reasons
why counsel could have chosen to not make additional objections during closing
argument, we cannot hold that counsel=s
conduct was so outrageous that no competent attorney would have engaged in it.  See Bone, 77 S.W.3d at 833.

4. 
Potential Remand.








During oral argument, Bollinger=s counsel suggested that the case could
be remanded to the trial court for an evidentiary hearing should we determine
that the record is insufficient. 
Bollinger relies upon Stogiera v. State, 191 S.W.3d 194 (Tex.
App.CSan
Antonio 2005, no pet.).[4]  The State responds that we lack the authority
to remand for supplementation of the record, relying upon Berry v. State,
995 S.W.2d 699, 702 (Tex. Crim. App. 1999).

Stogiera is distinguishable.  There, the defendant filed a motion for new
trial and requested a hearing.  The
defendant=s motion
was supported by affidavit testimony and alleged that his trial counsel had
provided constitutionally ineffective assistance of counsel.  The trial court denied the motion without
conducting a hearing.  The San Antonio
Court held that he was entitled to a hearing because his motion and
accompanying affidavits raised matters not determinable from the record that
could entitle him to relief.  191 S.W.3d
at 199.  The court abated the appeal and
remanded the case to the trial court with instructions to conduct an
evidentiary hearing on the motion for new trial.  Id. at 200-01.  In this case, no similar motion was filed.[5]

The Texas Court of Criminal Appeals has repeatedly
held that intermediate courts do not have the authority to remand a case to
develop a new record.  See, e.g.,
Solomon v. State, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); see also
Farris v. State, 712 S.W.2d 512, 515-16 (Tex. Crim. App. 1986) (appellate
record cannot be supplemented with evidence not developed during the proceedings
surrounding the defendant=s
trial; proper avenue for introducing evidence not contained in the trial record
is a hearing pursuant to a motion for new trial or an application for writ of
habeas corpus).

Because Bollinger=s
request essentially is for the purpose of developing new issues rather than to
conduct an evidentiary hearing the trial court was required to provide, we do
not have the authority to grant his request. 
Bollinger=s fifth
issue is overruled.

E.  Were Bollinger=s Rights to Due Process Violated by His
Conviction and Subsequent Detention?

 








Bollinger argues that, when considering the
totality of his arguments, his conviction reflects a substantial deviation from
the standard of evidence necessary to convict. 
Because we have previously overruled his primary issues and he has not
identified any additional reasons why reversible error still exists, Bollinger=s sixth issue is overruled.

                                 V. Holding

The judgment of the trial court is affirmed.

 

 

RICK STRANGE

JUSTICE

 

April 5, 2007

Publish.  See Tex. R. App. P. 47.2(b).

Panel
consists of: Wright, C.J., 

McCall,
J., and Strange, J.











[1]At trial, the deputies testified that Bollinger told
them he was Acoming@ from Midland. 
On the videotape, Bollinger said he was Abringing@ the guns from Midland.





[2]Such an instruction would instruct the jury to
disregard evidence that it determines was obtained illegally.





[3]We note that, despite the fact that the State
characterizes the potential objections to the prosecution=s closing argument as Afrivolous,@ it made no effort to justify even a single one of the
challenged statements in response to Bollinger=s fourth
issue.





[4]The court abated the appeal and remanded the case to
the trial court to conduct an evidentiary hearing.  The opinion after remand is Stogiera v.
State, No. 04-04-00675-CR, 2006 WL 3419778 (Tex. App.CSan Antonio November 29, 2006, no pet.) (not designated
for publication).





[5]Bollinger did file a motion for new trial that included
an affidavit from his trial counsel. 
That motion, however, did not raise ineffective assistance of counsel as
an issue.  The evidence attached to the
motion concerned the admissibility of testimony offered during the punishment
phase of the trial.  This particular
issue has not been carried forward on appeal.